IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LISA A. KRUPCZAK                *
                               *
          Plaintiff            *
                               *
v.                             *
                               *    Civil Action No. WMN-16-23
DLA PIPER LLP (US) <u>et al.</u>    *
                               *
          Defendants           *
_____*
LISA A. KRUPCZAK                *
                               *
          Plaintiff            *
                               *
v.                             *
                               *    Civil Action No. WMN-16-24
DLA PIPER LLP (US) <u>et al.</u>    *
                               *
          Defendants           *
                               *
  *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

**MEMORANDUM**

Plaintiff Lisa A. Krupczak, acting <u>pro se</u>, filed two

identical Complaints against Defendants DLA Piper LLP (DLA

Piper), Unum Life Insurance Company of America (Unum), and Named

and Unnamed Individuals.[1]  WMN-16-23, ECF No. 2; WMN-16-24 ECF

No. 2.  DLA Piper removed the cases to this Court on January 4,

2016.  WMN-16-23, ECF No. 1; WMN-16-24, ECF No. 1.  The three-

count Complaints assert 1) "Wrongful Termination in V[i]olation

of the ADA," 2) "Abusive Discharge," and 3) "Breach of Covenant

---

[1] The first Complaint was filed in the Circuit Court of Maryland
for Baltimore City, Case No. 24-C-15-006074, on November 30,
2015.  WMN-16-24, ECF No. 1.  The second Complaint was filed in
the Circuit Court of Maryland for Baltimore County, Case No. 03-
C-15-013021, on December 1, 2015.  WMN-16-23, ECF No. 1.

of Good Faith and Fair Dealings." WMN-16-23, ECF No. 2; WMN-16-24, ECF No. 2.   Although Count II of the Complaint is titled "Abusive Discharge," the cause of action is for wrongful termination.   See id. ¶ 36 (stating DLA Piper's "actions including the retaliation or termination for becoming disabled and other conduct alleged above constitutes the tort of wrongful termination in violation of the public policy of the State of Maryland").

The following motions are pending before the Court: Unum's Motions to Dismiss, (WMN-16-23, ECF No. 10; WMN-16-24, ECF No. 8), DLA Piper's Motions to Dismiss, (WMN-16-23, ECF No. 13; WMN-16-24, ECF No. 11), and Defendants' Motions to Consolidate Related Actions, (WMN-16-23, ECF No. 14; WMN-16-24, ECF No. 12). Upon a review of the parties' submissions and the applicable case law, the Court determines that no hearing is necessary, Local Rule 105.6, and that the pending motions will be granted. Because Civil Action Numbers WMN-16-23 and WMN-16-24 will be consolidated under Civil Action Number WMN-16-23, all further docket citations are to Civil Action Number WMN-16-23 unless otherwise noted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In October of 2012, Plaintiff began working for DLA Piper as a Client Account Team Leader in Baltimore, Maryland.   During her employment with DLA Piper, Plaintiff was a participant in an

2

employee welfare benefit plan (benefit plan) maintained by DLA
Piper and administered by Unum.  In January of 2014, Plaintiff
requested leave from work to undergo medical treatment.  On
February 10, 2014, DLA Piper approved Plaintiff's request for
continuous leave until May 12, 2014, with full pay and medical
benefits under DLA Piper's Short Term Disability (STD) program.

On May 12, 2014, DLA Piper notified Plaintiff that it was
eliminating her position.  On May 16, 2014, DLA Piper's Director
of Human Resources, Melissa Armentrout, sent Plaintiff a letter
regarding her termination which was organized into two sections.
ECF No. 13-4.  The first section of the letter informed
Plaintiff that DLA Piper would pay her the full amount of her
salary through May 16, 2014, and that her termination would not
impact the status of the benefits she was receiving under the
STD program.  The first section also advised Plaintiff that her
medical, vision, and dental insurance would continue to be paid
until May 31, 2014, and that after that time, she would be
eligible for COBRA.  The second section of the letter, titled
"Terms of the Agreement," offered Plaintiff a separation
package.  That separation package gave Plaintiff the option to
elect four weeks of severance pay as well as continued medical
coverage through June 30, 2014, among other things, in exchange
for an agreement to release all claims Plaintiff might have
against DLA Piper and its employees.  On May 20, 2014, Plaintiff

3

accepted the separation package by signing the separation agreement.

On October, 28, 2014, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC), claiming that she was discharged in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12181 et seq. On August 31, 2015, the EEOC issued a written notice dismissing Plaintiff's Charge of Discrimination. Thereafter, Plaintiff initiated the actions currently pending before the Court. The crux of Plaintiff's claim is that, when she was hired, she was told she could work at DLA Piper until retirement, yet she "was terminated because of the disability, and to evade the commitments and employment benefits promised to her until retirement." ECF No. 2 ¶ 27(d). Plaintiff asserts that DLA Piper engaged in discrimination, colluded with Unum to mask that discrimination, and manufactured the basis relied upon for the termination of her employment and benefits. Plaintiff further alleges that DLA Piper has a policy to terminate employees when claims for disability are made.

On January 8, 2016, Unum filed Motions to Dismiss, asserting two grounds for dismissal; failure to state a claim upon which relief can be granted and failure to exhaust administrative remedies under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1100 et seq. ECF No. 10. On

January 11, 2016, DLA Piper filed separate Motions to Dismiss, asserting that all of Plaintiff's claims against it and its employees are legally barred by a valid release, i.e. the separation agreement, and for failure to state a claim upon which relief can be granted.  ECF No. 13.  On January 11, 2016, Defendants filed Motions to Consolidate Related Actions.  ECF No. 14.

## II. DISCUSSION

### A. Motion to Consolidate

Defendants request that this Court enter an order consolidating the above captioned actions pursuant to Federal Rule of Civil Procedure 42(a)(2).  Plaintiff has not opposed this motion.  Under Rule 42(a)(2), "[i]f actions before the court involve a common question of law or fact, the court may: ... consolidate the actions."  Plaintiff's Complaint in Civil Action Number WMN-16-23 is identical to her Complaint in Civil Action Number WMN-16-24; the same exact facts, questions of law, and parties are before the Court in both actions.  Where, as here, related actions involve identical allegations and legal claims, the interest of judicial economy dictates that the actions be consolidated for all purposes.  See, e.g., Coyne & Delany Co. v. Selman, 98 F.3d 1457, 1473 (4th Cir. 1996) (finding substantial overlap between two lawsuits and requiring

consolidation).   Therefore, the Court will grant Defendants'
motion to consolidate.

B. Motions to Dismiss

    i. Legal Standard

    Rule 12(b)(6) of the Federal Rules of Civil Procedure
authorizes the dismissal of a complaint for failure to state a
claim upon which relief can be granted; therefore, a Rule
12(b)(6) motion tests the legal sufficiency of a complaint.
Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999).
In evaluating a motion to dismiss filed pursuant to Rule
12(b)(6), the court must accept as true all well-pled
allegations of the complaint and construe the facts and
reasonable inferences derived therefrom in the light most
favorable to the plaintiff.   Ibarra v. United States, 120 F.3d
472, 474 (4th Cir. 1997).  To survive dismissal, "a complaint
must contain sufficient factual matter . . . to 'state a claim
to relief that is plausible on its face.'"   Ashcroft v. Iqbal,
556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly,
550 U.S. 544, 570 (2007)).  "A claim has facial plausibility
when the plaintiff pleads factual content that allows the court
to draw the reasonable inference that the defendant is liable
for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citing
Twombly, 550 U.S. at 556).  "In considering a challenge to the
adequacy of a plaintiff's pleading, however, a court may

properly consider documents 'attached or incorporated into the complaint,' as well as documents attached to the defendant's motion, 'so long as they are integral to the complaint and authentic.'"  Johnson v. Baltimore City Police Dep't, Civil No. ELH-12-2519, 2014 WL 1281602, at *13 (D. Md. Mar. 27, 2014) (quoting Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009)).

When dealing with a pro se party, "the longstanding practice is to construe pro se pleadings liberally."  Slade v. Hampton Roads Reg'l Jail, 407 F.3d 243, 252 (4th Cir. 2005). Nonetheless, dismissal of a pro se complaint for failure to state a claim is appropriate where it appears "beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief."  Russell v. Russel Motor Cars Inc., 28 F. Supp. 3d 414, 420 (D. Md. 2014).

ii. Unum's Motion to Dismiss

Unum asks this Court to dismiss the Complaint for failure to state a claim upon which relief can be granted, arguing that "[t]here is simply no specific substantive allegation against Unum and there is no mention of Unum" in any of the causes of action, "including the requests for relief thereunder."  ECF No. 10-1 at 8.  Upon review, the Court agrees; the gravamen of Plaintiff's Complaint is her allegation that DLA Piper discriminated against her due to her disability by terminating

her employment contract with the objective of cutting off her
employment benefits.  Plaintiff's ADA claim (Count I) and state
law claim for wrongful termination (Count II) concern DLA
Piper's termination of Plaintiff's employment contract.
Although Plaintiff's Complaint alludes to collusion between Unum
and DLA Piper, it fails to specify what unlawful actions Unum
undertook, when they occurred, and how DLA Piper's termination
of Plaintiff was influenced by Unum in its role as administrator
of the benefit plan.  With respect to Counts I and II, the Court
finds that Plaintiff has not stated a claim against Unum.

Maryland law does not recognize the cause of action
asserted in Count III, breach of the implied covenant of good
faith and fair dealing, as an independent cause of action.
Mount Vernon Properties, LLC v. Branch Banking & Tr. Co., 907
A.2d 373, 381 (Md. Ct. Spec. App. 2006).  A breach of that
implied covenant simply supports "another cause of action at
law, e.g., breach of contract."  Id.  Count III concerns DLA
Piper's termination of Plaintiff's employment contract.  Thus,
construing Count III as a claim for breach of contract, under
Maryland law, that claim must allege with certainty and
definiteness "facts showing a contractual obligation owed by the
defendant to the plaintiff and a breach of that obligation by
the defendant."  Cont'l Masonry Co., Inc. v. Verdel Constr. Co.,
Inc., 369 A.2d 566, 569 (Md. 1977).  Plaintiff has not alleged

that Unum was a party to Plaintiff's employment contract, thus, the Court finds that Plaintiff has failed to state a claim against Unum in Count III.

Unum's second ground for dismissal concerns Plaintiff's failure to exhaust administrative remedies under ERISA.[2]  Despite the lack of a formal cause of action under ERISA and against Unum, the Court, construing Plaintiff's Complaint liberally, finds that it alludes to a purported claim for disability benefits pursuant to the benefit plan, which is unmistakably governed by ERISA.  Although ERISA does not contain an explicit exhaustion requirement, courts have generally required claimants to exhaust the remedies provided by their benefit plans as a prerequisite to filing an ERISA action.  See Gayle v. United Parcel Serv., Inc., 401 F.3d 222, 226 (4th Cir. 2005)("An ERISA welfare benefit plan participant must both pursue and exhaust plan remedies before gaining access to the federal courts.").  In fact, ERISA governed employee benefit plans are required to provide internal dispute resolution procedures for participants whose claim for benefits has been denied.  29 U.S.C. § 1133.  As

_____

[2] The Court notes that while failure to exhaust administrative remedies is an affirmative defense, courts can, and often do, address that defense in ruling on a motion to dismiss under Rule 12(b)(6).  See Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (noting that "where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)").

stated by the United States Court of Appeals for the Fourth
Circuit, the exhaustion requirement "rests upon [ERISA's] text
and structure as well as the strong federal interest encouraging
private resolution of ERISA disputes."  <u>Makar v. Health Care
Corp. of the Mid-Atlantic</u>, 872 F.2d 80, 82 (4th Cir. 1989).

　　　Unum's motion asserts that Plaintiff is presently receiving
long term disability (LTD) benefits under the benefit plan, that
her claim for benefits has never been terminated or suspended
since its inception on February 10, 2015, and that she has never
filed an administrative appeal related to the termination of
benefits under the benefit plan.  In opposition, Plaintiff cites
to the Appeal Procedures section of the benefit plan, which
states "[u]nless there are special circumstances, the
administrative appeal process must be completed before you begin
any legal action regarding your claim."  ECF No. 10-4 at 43.
Plaintiff states, without further explanation, that because her
claim "is special in nature" and "holds special circumstances,"
the internal dispute resolution process does not apply.  ECF No.
25-1 at 6.

　　　The Court finds that the benefit plan's Appeal Procedures
section applies only after there has been an adverse benefit
determination.  Unum has not made an adverse benefit
determination, and therefore, there cannot be an appeal of the
same.  A stated previously, there is no evidence that Plaintiff

10

has ever initiated the administrative process outlined in her benefit plan, much less exhausted it, nor a showing of futility that might otherwise circumvent an exhaustion requirement; therefore, the Court finds that Plaintiff's ERISA claims must be dismissed for failure to exhaust administrative remedies.

In conclusion, all claims against Unum stop short of the line between possibility and plausibility of entitlement to relief.  Although Plaintiff is acting pro se, the Court's "liberal construction does not absolve Plaintiff from pleading a plausible claim." Wilson v. City of Gaithersburg, 121 F. Supp. 3d 478, 482 (D. Md. 2015).  As such, Unum's Motion to Dismiss, ECF No. 10, will be granted.[3]

### iii. DLA Piper's Motion to Dismiss

DLA Piper's Motion to Dismiss asserts that Plaintiff's claims against it and its employees[4] are legally barred by a

---

[3] Plaintiff requests the opportunity to amend her Complaint to "cure any indicated deficiencies." ECF No. 25 at 2.  Amendment as to Unum would be futile; however, because Unum was not responsible for Plaintiff's termination, rather, it was responsible for administering the benefit plan.  To that extent, any claim against Unum, other than an ERISA claim regarding benefits under the benefit plan, would be preempted by ERISA. See, e.g., Gagliano v. Reliance Standard Life Ins. Co., 547 F.3d 230, 238 (4th Cir. 2008) (stating that ERISA preemption is broad and that ERISA supersedes "any and all State laws" that relate to an employee benefit plan).

[4] In the section of the Complaint titled "Parties," DLA Piper employees Sandy Dolle, Irene Jakubowski, and Melissa Armentrout are mentioned by name.  Federal Rule of Civil Procedure 10(a) states "[t]he title of the complaint must name all the parties."

valid release contained in Plaintiff's separation agreement.

While extrinsic evidence is generally not considered at the

12(b)(6) stage, "when a defendant attaches a document to its

motion to dismiss, a court may consider it in determining

whether to dismiss the complaint if it was integral to and

explicitly relied on in the complaint and if the plaintiffs do

not challenge its authenticity."  Am. Chiropractic Ass'n v.

Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004)

(internal citations omitted).  The separation agreement is

Exhibit C of DLA Piper's Motion to Dismiss.  ECF No. 13-4.  The

separation agreement is integral to the Complaint, explicitly

relied upon therein, see ECF No. 2 ¶ 25, and its authenticity is

not disputed.  Therefore, the Court will consider the separation

agreement in evaluating DLA Piper's motion.

The separation agreement provides, in pertinent part:

In exchange for the Separation Payments and other
consideration being provided to you, you hereby
release the Firm of and from any and all known or
unknown claims, causes of action, liability, and/or
damages arising out of or relating to your employment
with the Firm and/or the termination of that
employment, to the greatest extent permitted under
applicable law.  By signing this Agreement, you are
waiving any such claims that you have or may have
against the Firm, its partners, directors, officers,

Due to Plaintiff's failure to follow this rule in regards to the
three identified DLA Piper employees, and more significantly,
Plaintiff's failure to state any cause of action against them in
the Complaint, the Court finds that the three named individuals
are not parties to this case.

shareholders, employees, attorneys, insurers, legal
successors and assigns, and all other related or
affiliated persons, firms or entities. This includes
all claims, rights, and/or obligations arising under
any federal, state or local laws pertaining to
employment, including but not limited to all
employment discrimination laws, such as Title VII of
the Civil Rights Act of 1964, the <u>Americans with
Disabilities Act</u> ... <u>the Employee Retirement Income
Security Act of 1866</u>, ... and any and all other
federal, state and local statutes, cases, authorities
or laws ... including but not limited to claims of
<u>wrongful termination</u> ... <u>breach of contract</u>, fraud,
negligence, and any other contract or tort claims.
THIS IS A GENERAL RELEASE OF CLAIMS.

ECF No. 13-4 ¶ 8 (emphasis added). Plaintiff does not dispute

that the separation agreement, by its terms, would preclude her

from maintaining a suit on these claims. Instead, Plaintiff

asserts that the separation agreement is not valid 1) because it

"was signed under coercion by [DLA Piper's] Director of Human

Resources, Melissa Armentrout" and 2) because the agreement "was

signed while she was undergoing a rigorous medical treatment

including medication which affected her mental and decision

making abilities." ECF No. 25 at 1.

"Courts have, in the employment law context, commonly

upheld releases given in exchange for additional benefits."

Rivera-Flores v. Bristol-Myers Squibb Caribbean, 112 F.3d 9, 11

(1st Cir. 1997); <u>see</u> Reighard v. Limbach Co., Inc., 158 F. Supp.

2d. 730, 733 n.8 (E.D. Va. 2001) (collecting cases indicating

that an employee can waive existing claims under ERISA); Equal

Emp't Opportunity Comm'n v. Waffle House, Inc., 534 U.S. 279,

299-300 (2002) (indicating that an employee can waive their ability to bring suit on an ADA claim).  In the Fourth Circuit, courts apply ordinary contract principles to determine the validity of a release, and therefore, "turn to the appropriate state's law for guidance."  O'Shea v. Commercial Credit Corp., 930 F.2d 358, 362 (4th Cir. 1991).  The separation agreement provides that it "will be interpreted and enforced in accordance with Maryland law."  ECF No. 13-4 ¶ 13.

A claim that a release is voidable on the ground of duress must be supported with allegations of "(1) [a] wrongful act or threat by the opposite party to the transaction or by a third party of which the opposite party is aware and takes advantage, and (2) a state of mind in which the complaining party was overwhelmed by fear and precluded from using free will or judgment."  Food Fair Stores, Inc. v. Joy, 389 A.2d 874 (Md. 1978).  Plaintiff asserts that she signed the agreement "under coercion and with the threat of not only losing her medical insurance, but her financial income as well," yet, the separation agreement explicitly states:

> [t]his change in employment status does not impact the status of the benefits you are currently receiving under the Firm's short-term disability (STD) plan ... STD benefits are paid at a rate equal to 100% of your base biweekly earnings and continue for up to 365 days from your disability start date of February 10, 2014, contingent upon the continued approval of Unum.

ECF No. 13-4 at 1.   Thus, when Plaintiff signed the separation agreement, she was receiving STD benefits in the amount of 100% of her salary and would continue to receive those benefits regardless of whether she accepted the separation package. Plaintiff's claim that she was faced with the threat of losing everything is not only unsupported by the record, but it is insufficient as a matter of law.   "Personal economic burdens resulting from the loss of a job do not, generally speaking, constitute 'duress' for the purpose of invalidating a termination release."   Lewis v. Extended Stay America, Inc., 454 F. Supp. 2d 453, 458 (M.D.N.C. 2006) (citing Melanson v. Browning-Ferris Indus., Inc., 281 F.3d 272, 277 (1st Cir. 2002)).

To further support her claim of duress, Plaintiff asserts that Ms. Armentrout coerced her into signing the separation agreement.   Her support for this assertion comes from an email from Ms. Armentrout, which states:

> I wanted to make sure you didn't send me the signed agreement, because I haven't received anything.   In order to receive a paycheck on May 30, I will need the signed agreement no later than Tuesday, May 27.   You obviously have longer than that to consider the agreement, but you wouldn't receive a paycheck until we have the executed document.

ECF No. 25-3.   The Court finds that this email is merely informational, without any coercive tone or threat which might preclude Plaintiff from using free will or sound judgment in

making her decision.   Furthermore, Plaintiff was given 21 days
to sign the agreement and an additional 7 days to revoke her
acceptance; ample time to weigh her options and consult with
counsel, if she wished to do so.

Finally, Plaintiff's assertions regarding her capacity to
give valid consent are contradictory.   Plaintiff argues that the
separation agreement should not be enforced because it was
"signed while she was undergoing rigorous medical treatment
including medication which affected her mental and decision
making abilities."   ECF No. 25 at 1.   This assertion, that she
could not "focus on, comprehend or understand the lengthy
document [] due to the side-effects suffered," is contradicted
by her following assertion that she signed the agreement
"without reading the document."   ECF No. 25-1 at 3-4.   Further,
while undergoing the same course of treatment, she pursued a
Charge of Discrimination with the EEOC, drafted and filed the
Complaints in this matter, and drafted the opposition to the
motions to dismiss.   As such, Plaintiff certainly had the
capacity to understand her affirmation that "I HAVE READ THE
FOREGOING OFFER AND I FULLY UNDERSTAND ITS TERMS. I AM SIGNING
THIS AGREEMENT FREELY AND VOLUNTARILY, HAVING BEEN GIVEN A FULL
AND FAIR OPPORTUNITY TO CONSIDER IT AND CONSULT WITH MY OWN
LEGAL COUNSEL."   ECF No. 13-4 at 7.

In conclusion, Plaintiff's assertion that her medical condition and medications affected her decision making capability is not enough.  "Mere evidence of diagnostic labels without content tying them to capacity to give valid consent is inadequate to create an issue as to the consequences of the disorders on an individual's capacity to give valid consent." Rivera-Flores, 112 F.3d at 13.

In the alternative, the Court notes that if the release executed by Plaintiff was invalid, i.e. voidable, Plaintiff's subsequent acceptance of the separation package demonstrated her intent to ratify the agreement.  "It is a well-established proposition that the retention of the benefits of a voidable contract may constitute ratification." O'Shea, 930 F.2d at 362; see, e.g., In re Boston Shipyard Corp., 886 F.2d 451, 455 (1st Cir. 1989) ("a contract or release, the execution of which is induced by duress, is voidable, not void, and the person claiming duress must act promptly to repudiate the contract or release or he will be deemed to have waived his right to do so"); Anselmo v. Manufacturers Life Ins. Co., 771 F.2d 417, 420 (8th Cir. 1985)(a plaintiff who signed a release under threat of losing severance pay sued to rescind, claiming duress, and the court held for defendant on the ground that the employee accepted the benefits and thereby ratified the contract).  By retaining the benefits of the separation package and filing suit

a year and a half later, Plaintiff seeks to both benefit from the agreement and gain relief from this Court, an outcome which the doctrine of ratification was designed to prohibit.  By signing the agreement, failing to revoke it, and accepting payment under it, Plaintiff released any claims arising from her employment with, or termination of employment from, DLA Piper. The Court finds that Plaintiff's claims against DLA Piper are barred by a valid release, or in the alternative, by ratification.[5]

## III. CONCLUSION

For the above-stated reasons, the Court will grant all pending motions in Civil Action Numbers WMN-16-23 and WMN-16-24. A separate order will issue.


_____/s/_____
William M. Nickerson
Senior United States District Judge


DATED: July 27, 2016

---

[5] Plaintiff's request to amend her Complaint as to DLA Piper is denied, as the flaws in the Complaint are not just technical pleading failures, but rather, stem from Plaintiff's fundamental inability to state a viable claim due to the separation agreement.